*In re* Johnson.

No. 18,683.

IN RE THE INSANITY OF SWAN JOHNSON (SWAN JOHNSON, *Appellant;* THE STATE OF KANSAS, *Appellee.*)

SYLLABUS BY THE COURT.

1. INSANE PATIENT—*In Hospital—Application for New Hearing in Probate Court—Denied.* Where, upon proceedings in a probate court appearing on the face of the record to be regular, a person has been found to be insane and has been placed in a state hospital as provided by statute, that court is not bound to set aside the adjudication and try the matter anew on the motion of the patient based upon his allegation that he was not insane when the adjudication was made.

2. SAME—*General Allegations of Fraud Present no Issue.* A general allegation that a patient was committed to the hospital through fraud and conspiracy is insufficient to present any issue, in the absence of any statement of facts showing fraudulent conduct.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed April 11, 1914. Affirmed.

*John F. Hanson,* of Lindsborg, for the appellant.

*John S. Dawson,* attorney-general, *W. E. Atchison,* county attorney, and *T. M. Lillard,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

BENSON, J.: The appellant, having been placed in a state hospital for the insane by proceedings in a probate court, filed a petition in the same court to set aside and vacate the proceedings. The petition states the following reasons:

"1. That I demanded a jury trial which was refused by the court.

"2. That the so-called insanity commission disagreed.

"3. That the alleged commission's report is untrue and false.

"4. There was no evidence of insanity before the court.

"5. That the appointed attorney . . . did in no way represent me or try to defend me.

"6. That I did not have any opportunity to consult and see my relations and friends.

"7. That there was no physical examination.

"As a whole it shows upon its face that this proceeding was not *bona fide* and was not warranted that this proceeding took place the 28th day of January, 1910, in the court house where I was going to obtain information from the county attorney."

It was also alleged that "this conspiracy was participated in" by four persons whose names are given, and others.

A motion was filed by the county attorney to dismiss the petition on the grounds:

"That the several orders and judgments referred to and asked by said petition to be set aside, vacated and held for naught, are each and all duly and validly rendered judgments of a court of competent jurisdiction after having acquired full and complete jurisdiction of the subject matter therein adjudicated and of the person of the said Swan Johnson, and are wholly without fraud or other vitiating circumstance.

"That the said petitioner, Swan Johnson, has been regularly and legally adjudicated by this court to be a person of unsound mind and insane; that the several inquests and verdicts in relation to the mental condition of said Swan Johnson have contained findings that his special delusion is that he has been wrongfully and illegally tried and persecuted by the public authorities as set-forth in his said petition, and that the said petition is, therefore, not such a pleading as to challenge the attention of the court."

On appeal to the district court the order of dismissal was affirmed, and the petitioner appealed to this court.

The opinion of the district court clearly states the situation, viz.:

"It was agreed on the hearing that the files and proceedings of the probate court since this matter originated in 1910 should be considered in the determination.

of this appeal. (Also in a previous case.) Without going into the details, it may be stated that all the proceedings of the probate court appear to be regular and in due form. The question presented is, whether in a case where there has been an adjudication of insanity and a guardian appointed by the probate court, the person adjudged insane and while yet under guardianship may as a matter of right file a petition to set aside all the proceedings and demand a hearing thereon without consultation with or action by his guardian and without any other person appearing as sponsor for him, and no excuse being offered in his petition for such method of procedure."

The conclusion of the district court was:

"Upon full consideration I am of the opinion that it was not the duty of the probate court to proceed to a hearing upon the petition filed in this matter and under the circumstances shown. Before that court should be bound to proceed in any event the petition should, in my judgment, be presented by the guardian, or, on his refusal, by a next friend. In case the petitioner is not able to secure action in either of these ways, then, upon allegations of that fact in his petition, he should be allowed to proceed in his own name. In any case the petition ought to set out in detail the facts constituting the alleged conspiracy and fraud. The present petition is defective in this respect.

"In a matter of this kind, not regulated by statute, some reasonable discretion should be held to rest in the probate court to determine under what method of procedure one adjudged insane and under guardianship shall be allowed to secure a hearing of the kind here attempted."

The files and proceedings of the probate court referred to in the opinion are not abstracted in this court, and we must presume that they are as the district court found them to be, in regular form. The question on the motion to dismiss was whether the petition on its face stated facts sufficient to sustain the application for another trial. The different grounds will be considered. There was no error in not allowing a jury trial. The jury here referred to is understood

to be a common-law jury. The proceeding was not a trial, but an inquest, to which the constitutional provision for jury trials does not apply. (*The State v. Linderholm,* 84 Kan. 603, 114 Pac. 857.) Besides, it appears that no demand for a jury was made until after the finding of the commission had been returned.

The charge that the commission disagreed is contradicted by the finding returned in a course of regular procedure. That the report or finding is untrue, and that no evidence of insanity was offered, are equivalent to an allegation that the patient was not insane at the time of the inquest, and amount to a request to the court to set aside the finding of the regularly appointed triers of the fact after it had been approved and carried into effect. The court had the right to set aside the verdict when it was returned. (Gen. Stat. 1909, § 8470.) It did not do so, however, but, on the contrary, approved the report and entered judgment upon it. After such adjudication the court was not bound to vacate it and try the matter anew upon the allegation of the subject of the inquiry that he was not insane when the finding was made; otherwise such proceedings might have no end.

The petition is entirely insufficient to show a right of relief on the ground of fraud or conspiracy. Fraud is a term by which facts are often characterized, but the facts should be stated to which, if proven, the term might apply. Where this is done the use of the epithet is immaterial. (*Way v. Bronston,* 91 Kan. 446, 138 Pac. 601.) Here the label is applied but the facts are wanting. (*Cockrell v. Henderson,* 81 Kan. 335, 105 Pac. 443.) In *L. L. & G. Rld. Co. v. Comm'rs of Douglas Co.,* 18 Kan. 169, it was held that charging fraud and conspiracy in general terms was insufficient. In *The State, ex rel., v. Williams,* 39 Kan. 517, 18 Pac. 727, it was said:

"Allegations of fraud and illegality, without a statement of the facts constituting the same, are mere legal conclusions and of no force in a pleading. No issue is

presented by such averments, and no proof is admissible thereunder." (p. 520.)

The reference to the attorney is too vague and indefinite to admit of discussion.

It is concluded that the regularity of the proceedings precludes inquiries upon the matters referred to in the motion, except as to fraud, and that was not stated in such manner as to present an issue. The statute provides for an orderly inquiry into the condition of those whose alleged mental unsoundness challenges the attention and care of the state. To provide this care great institutions are maintained by the state, under the control of a board carefully chosen, and through the aid of superintendents, physicians, surgeons, nurses and attendants. The proceedings by which these means are made available for the well-being of those who by their misfortune have the right to the care and protection of the public are not hostile, but friendly. If mistakes are made in admission to the hospitals, or in detention after restoration, means are provided for ·discharge through the interposition of the board of control and superintendent. (Gen. Stat. 1909, § 8483.) It must be presumed that these officers will discharge their duties wisely and humanely. Another section provides for an orderly hearing in the probate court upon the question whether sanity has been restored. With these safeguards it is not believed that those who should have only sympathy and care will be oppressed. What other remedy may be available if these should fail, and by whom it should be invoked, in a case of real fraud whereby a citizen is wrongfully and corruptly deprived of his liberty, need not be considered here, since no sufficient charges of that nature are made.

The judgment is affirmed.